UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
IN RE BOSTON SCIENTIFIC CORPORATION  :
SHAREHOLDERS LITIGATION              :    **MEMORANDUM AND**
                                     :    **ORDER GRANTING**
                                     :    **DEFENDANTS' MOTION**
                                     :    **TO DISMISS DERIVATIVE**
                                     :    **SUIT**
                                     :
                                     :    02 Civ. 247 (AKH)
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

       The issue on which I write is whether, in an action brought derivatively by stockholders, the decision of the directors of Boston Scientific Corporation, made upon the recommendation of an independent committee of the directors, to refrain from suing the managing officers and directors of the company is dispositive, and whether that recommendation of the independent committee of directors can be subjected to discovery proceedings. I conclude that the business judgment of the directors cannot be challenged by a derivative suit or subjected to discovery, and I order the Complaint dismissed.

       Plaintiffs' Second Verified Consolidated Amended Complaint ("The Complaint") survived dismissal by being treated as a demand upon the directors of defendant Boston Scientific Corporation ("BSC") to sue defendants Peter M. Nicholas, co-founder, former Chief Executive Officer and current Chairman of BSC, and Lawrence C. Best, Senior Vice President and Chief Financial Officer of BSC. After full investigation by an independent committee appointed by the Board of Directors ("The Board"), and their forty-four page report recommending against a lawsuit, the Board, on February 20, 2007, unanimously resolved to reject Plaintiffs' demand. Defendants then moved for an order dismissing the Complaint. For the reasons set forth below, I hold, applying Delaware law, that the Board's refusal of Plaintiffs'

1

demand is entitled to respect as a proper exercise of the Board's business judgment, and is not reviewable on the merits by a court. I hold also, for the reasons set forth below, that Plaintiffs are not entitled to discovery under Rules 26 and 34, Fed. R. Civ. P., in opposing Defendants' motion.

**Background**

This derivative lawsuit had its genesis in a hard-fought lawsuit between BSC and an Israeli company, Medinol, Ltd. Medinol had developed a coronary stent, and BSC had entered into a long-term arrangement with it. The lawsuit involved charges of corporate misdeeds by BSC and some of its principal officers, among them Nicholas and Best, to capture the stent for BSC. The case was settled for a significant amount of money during a bench trial before me.

Plaintiffs commenced this derivative action on January 10, 2002, alleging that Defendants Peter Nicholas ("Nicholas") and Lawrence Best ("Best"), among others, breached their fiduciary obligations to BSC by causing BSC to breach its coronary stent supply contract with Medinol. By random assignment, the case came to me, and neither side objected to me, because of my role in the Medinol case, as the presiding judge in this case.

Plaintiffs' complaint alleged that BSC's conduct vis-à-vis Medinol was likely to cause significant financial and reputational harm to BSC. Yet, the action between Medinol BSC had not yet been resolved, so the parties agreed to stay this action pending completion of the Medinol action. For an account of the Medinol lawsuit, see Medinol v. Boston Scientific Corp., 346 F.Supp.2d 575 (S.D.N.Y. 2004). The Medinol litigation was resolved by settlement, and dismissed with prejudice in October 2005.

Plaintiffs in this case filed the current amended complaint on May 1, 2006. By their Complaint, Plaintiffs again alleged that defendants Nicholas and Best breached their fiduciary obligations to BSC by causing BSC to breach its agreement with Medinol. Plaintiffs alleged that Nicholas and Best engaged in an elaborate scheme to deceive Medinol in order to free itself of its contractual obligations, in part by reverse-engineering Medinol's products through the creation of a secret shell corporation and facility in Ireland. Complaint ¶¶ 20, 50. As part of its scheme, which it titled, "Bringing a Better Deal," BSC also made false submissions to the U.S. Food and Drug Administration ("FDA"). Complaint ¶¶28-31. By their suit, and in addition to other relief, Plaintiffs seek, derivatively and on behalf of BSC, contribution from defendants Nicholas and Best for the $750 million that BSC paid to Medinol to settle its lawsuit, and the $74 million that BSC paid to the federal government to settle charges arising out of BSC's allegedly false submissions to the FDA.

On June 30, 2006, Defendants filed a motion to dismiss pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure, arguing that (1) pre-suit demand cannot be excused as futile under applicable Delaware law; (2) Plaintiffs failed to plead demand futility with the particularity required by Rule 23.1; and (3) the Complaint anyway failed to state a cause of action on behalf of BSC, since a breach of a contract with a third party, without more, does not constitute a breach of fiduciary obligation(s) to the corporation. Rather than dismiss the Complaint, I treated the Complaint as a demand upon the directors of defendant Boston Scientific Corporation to investigate its right to sue defendants Nicholas and Best in the best interests of BSC, and I denied Defendants' motion without prejudice to be renewed after the Board reviewed Plaintiffs' demand. See also Gueli Decl. Ex. B at 3, 10-21.

On October 31, 2006, BSC established a litigation committee ("the Committee") of three non-management, independent, directors to review Plaintiffs' demand, and the claims asserted in the Complaint, and to recommend appropriate action to the entire Board of Directors. On the Committee were the following three independent directors from the Board of BSC: Joel Fleishman, Raymond Groves and former United States Senator Warren Rudman, who served as the Committee Chair. The Committee retained a law firm, Janis, Schuelke & Wechsler ("Janis Schuelke") to assist in the investigation and to report its findings to the Committee. Janis Schuelke had previously worked with BSC's Board of Directors in connection with a Department of Justice investigation and had also attended interviews of BSC witnesses, and their testimony in the Medinol trial proceedings.

On November 29, 2006, Janis Schuelke informed Plaintiffs' counsel that they would be "advising the Board and the Special Committee on whether the corporation should adopt and prosecute the lawsuit, resolve the grievances internally without resort to litigation or reject the demand." Gueli Decl. Ex. E. Janis Schuelke also requested that Plaintiffs provide them, at Plaintiffs' "earliest convenience," with any "additional information not contained in the complaint" that Plaintiffs believed relevant to the investigation. Gueli Decl. Ex. E.

In anticipation of a Board of Directors meeting scheduled for February 20, 2007, Janis Schuelke presented to the Committee a forty-four page report ("the Report") on February 5, 2007, and met with the Committee on February 9, 2007 to review the same. By letter of February 12, 2007 (more than ten weeks after Defendants' invitation and one week after the presentation of Janis Schuelke's Report), Plaintiffs responded to Janis Schuelke's request for additional information. Plaintiffs described numerous other legal and regulatory "problems" BSC has faced in the past decade, and expressed the opinion that "BSC has historically lacked

4

the requisite internal mechanisms necessary to insure it will comply with regulatory and partnership duties and obligations," and that "something in BSC's corporate culture . . . engenders the kind of conduct . . . which Medinol experienced."  Gueli Decl. Ex. F.  Plaintiffs recommended alterations and augmentations to BSC's recently-formed "Compliance and Quality Committee," and requested that the Committee investigate: (1) what, if any, mechanisms were in place at BSC at the time of the Medinol contract to ensure that BSC was in compliance with its terms; (2) what investigations were undertaken, and by whom, respecting the establishment of BSC's secret, independent, reverse-engineered line of stents; (3) when the Board first learned of the possibility of litigation between Medinol and BSC; and (4) what discussions the Board undertook regarding the 1998 discovery of pinhole ruptures in BSC's coronary stent balloons and the related FDA investigations thereof.

On February 20, 2007, BSC's board of directors[1] met to discuss Plaintiffs' Complaint, the letter of February 12, 2007, and the Committee Report of February 5, 2007, and unanimously resolved, reflected by a Certificate dated February 26, 2007, to reject Plaintiffs' demand.  The resolution recited the report's findings that, inter alia, "no evidence [was found to suggest] that Mr. Nicholas or Mr. Best acted other than in what they believed at the time was the best interests of the Corporation, or that they were motivated in any way by conflicting personal interests," and that "neither Nicholas nor Best violated any fiduciary duty to the Corporation, and any lawsuit based on the claims and allegations in the Complaint would not be warranted by the facts or by existing law."  The resolution noted the Report's finding that "[y]ears of intensive investigation and discovery . . . have not produced sufficient evidence to establish that . . .

---

[1] With the exception of defendant Nicholas, his brother N.J. Nicholas, Jr., BSC co-founder John Abele, and current CEO James Tobin, all of whom were uninvolved with the consideration and discussion of Plaintiffs' demand and the resultant committee report.

5

Nicholas or . . . Best violated their fiduciary duties of good faith, due care or loyalty to the Corporation, and there is no reason to believe that further discovery could produce any additional, significant, and relevant testimony, documents or information." Gueli Decl. Ex. G.

On April 13, 2007, Defendants filed a motion to dismiss the Complaint on the basis of BSC's refusal of Plaintiffs' demand, pursuant to Rules 12(b)(b) and 23.1, Fed. R. Civ. P.

## Discussion

*A. Demand Refusal—Applicable Law and Standard of Review*

Because BSC is a Delaware corporation, Delaware law governs the substantive judicial review of BSC's decision to pursue or not pursue the suit that Plaintiffs have filed on its behalf. RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1326 (2d Cir. 1991); see Burks v. Lasker, 441 U.S. 471, 479 (1979). "A basic principle of the General Corporation Law of . . . Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation," and the decision whether or not to litigate a claim is an aspect of this managerial prerogative. Spiegel v. Buntrock, 571 A.2d 767, 772-73 (Del. 1990) (citations omitted); see 8 Del. Code § 141(a) ("The business and affairs of every corporation . . . shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation."); see also Aronson v. Lewis, 473 A.2d 805, 811-12 (Del. 1984) overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). The Derivative form of action, which permits an individual shareholder to bring suit to enforce a corporate cause of action, is a limited exception to board prerogative, and, because it impinges upon the board's power to manage the affairs of the corporation, is subject to pre-suit limitations. See Spiegel, 571 A.2d at 773. A shareholder cannot bring a derivative suit under Delaware law unless he "(1) makes a demand that the board cause the company to pursue the claim and

6

sufficiently alleges that 'the board wrongfully refused the plaintiff's pre-suit demand to initiate the suit,' or (2) sufficiently alleges that "a demand would be a futile gesture and is therefore excused." Loveman v. Lauder, ---F.Supp2d.---, 2007 WL 1264206, at *4 (S.D.N.Y. 2007) (quoting White v. Panic, 783 A.2d 543, 550 (Del. 2001)).

The effect of a demand is to place control of the derivative litigation in the hands of the board of directors, Spiegel, 571 A.2d at 775 (citing Zapata Corp. v. Maldonado, 430 A.2d 779, 784-86 (Del. 1981)), and when demand on a board has been made and refused, review under Delaware law is governed by the business judgment rule. E.g., id. at 774. The business judgment rule affords to the board a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson, 473 A.2d at 812.

The province of a court, in reviewing a challenge to a decision by the directors not to bring a lawsuit demanded by one or more stockholders, is to review the good faith and reasonableness of the board's investigation, for "the challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit." RCM, 928 F.2d at 1328; Spiegel, 571 A.2d at 777 ("[W]hen a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation. Absent an abuse of discretion . . . the . . . directors' decision not to pursue the derivative claim will be respected by the courts."). In order to survive a motion to dismiss, a plaintiff must therefore sustain the "considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation," that the board, in investigating the demand, failed to exceed the gross negligence standard established by the business judgment rule. RCM, 928 F.2d at 1328 (noting, "few, if any, plaintiffs surmount this obstacle"); Levner v. Saud, 903

F.Supp.2d 452, 457 (S.D.N.Y. 1994) (applying Delaware law in context of demand refusal and noting gross negligence standard of business judgment rule); see also Halpert Enters., Inc. v. Harrison, No. 06 Civ. 2331 (HB), 2007 WL 486561, at *5 (S.D.N.Y. Feb. 14, 2007) (same).

*B. Discovery*

Plaintiffs argue that discovery pursuant to Rules 26 and 34 is required in order to afford them access to the "Special Committee Report and the underlying documents" that the Board considered in coming to its decision to refuse Plaintiffs' demand. Pl.'s Mem. 4. Defendants oppose discovery, arguing that Delaware law prohibits such discovery. Grimes v. DSC Commc'n Corp., 724 A.2d 561, 565-566 (Del. Ch. 1998) ("It is well settled law in Delaware that a plaintiff who files a derivative suit is not entitled to discovery in that action in order to assist him or her in meeting the pleading requirements . . . .") overruled on other grounds by Brehm, 746 A.2d at 244.

Although I am not bound by the law of Delaware as it relates to procedural matters, such as discovery, see Fagin v. Gilmartin, 432 F.3d 276, 285 n.2 (3d Cir. 2005) ("[D]iscovery in the demand-refused context is procedural, so federal law applies . . . ."), I hold that no discovery is needed or warranted in this case. Federal courts routinely evaluate allegations of wrongful refusal of shareholder demand at the pleadings stage and in the context of a motion to dismiss. E.g., Halpert, 2007 WL 486561, at *4-6; Allison v. Gen. Motors Corp., 604 F.Supp. 1106 (D.Del. 1985) aff'd 782 F.2d 1026 (3d Cir. 1985).

More importantly, affording discovery, and allowing the case to proceed beyond the pleadings stage, would frustrate the purposes behind Delaware's substantive law regarding demand-refusal, and its recognition that the determination of whether or not to pursue litigation is a business decision entitled to deference under the business judgment rule. See Levine v.

Smith, 591 A.2d 194, 208-10 (Del. 1991) (denying discovery in demand-refused context and stating that holding otherwise would represent "complete abrogation" of the pleading requirements and of corporate legal principles) overruled on other grounds by Brehm, 746 A.2d at 244.

### C. Adequacy of Board's Review

To rebut the presumption afforded to the Board by the business judgment rule, the plaintiff is required to show a reasonable doubt as to the good faith or reasonableness of the Board's investigation. Halpert, 2007 WL 486561, at *5; Spiegel, 571 A.2d at 777. A principal question is if the directors acted on an informed basis in rejecting the derivative plaintiff's demand to sue. Levine, 591 A.2d at 213. Plaintiffs argue that the Board's investigation was unreasonable, since it relied upon Janis Schuelke's investigation and Report, and that report was completed without the benefit of any interviews, relying only upon the evidence already gathered in the Medinol action.

Yet, courts reviewing the reasonableness of board investigations in this context have noted that there is "obviously no prescribed procedure that a board must follow," id. at 214, and have found investigations similar to the one undertaken in this case to qualify for deference under the business judgment rule. E.g., id. (board merely reviewed and rejected demand letter without forming committee or retaining outside counsel). Similarly, in Halpert, the court addressed the contention that outside investigatory counsel merely referenced prior investigations: "Plaintiffs allege that the Committee merely referenced prior investigations, and thus failed to consider whether specific, individual directors breached their fiduciary duty. However, Plaintiffs cite no caselaw supporting that such consideration is a requirement of an investigation, without which gross negligence is present." 2007 WL 486561 at *5.

9

The record in the Medinol litigation was extensive and detailed. Janis Schuelke had at its disposal numbers of interviews already conducted and substantial trial testimony and exhibits, in addition to the information gathered in its earlier investigative work for BSC. Already familiar with the events at issue and the relevant allegations of misconduct, Janis Schuelke issued its report and reviewed its contents with the Committee, which then reported its findings, along with Plaintiffs' letter, to the Board. I cannot say that the information before the board was inadequate for a reasonable decision.

Plaintiffs also argue that the Board's investigation was necessarily incomplete inasmuch as the Board met for "only one hour" to discuss Plaintiffs' demand and agree upon the Resolution. Pl's Mem. 8. Again, Plaintiffs fail to call into question the reasonableness of the investigation. While the Board may have discussed Plaintiffs' demand for one hour, the Committee had already undertaken extensive review, with the benefit of outside counsel. The independent directorship then met in its entirety to review the findings of the Committee and the commissioned report, before unanimously resolving to reject Plaintiffs' demand. The fact that the Board itself met only for one hour, by itself, fails to vitiate the reasonableness of the Board's investigation, or the deference to which that investigation is entitled. See Levine, 591 A.2d at 214 ("Corporate directors normally have only limited available time to deliberate, and a determination of what matters will (and will not) be considered must necessarily fall within the board's discretion.").

Plaintiffs do not seem to challenge directly the good faith of the Board's investigation. To the extent that Plaintiffs put the Board's good faith at issue, they do so only by attacking the substance of the Board's opinion, and they do that, essentially, by re-asserting the merits of the lawsuit they would like the Board to commence. As explained above, the potential

10

merits of the lawsuit itself are not at issue in the context of a motion to dismiss for failure to show wrongfulness of a demand refusal, and Plaintiffs' arguments cannot vitiate the business judgment rule in this case. RCM, 928 F.2d at 1328 ("[T]he challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit."); Spiegel, 571 A.2d at 777 ("[W]hen a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation. Absent an abuse of discretion . . . the . . . directors' decision not to pursue the derivative claim will be respected by the courts.").

## Conclusion

For the reasons stated above, I grant Defendants' motion and dismiss the Complaint, Fed. R. Civ. P. 12(b)(6). The Clerk of the Court shall mark the case as closed.

SO ORDERED.

Dated:   New York, New York
         June __13__, 2007

_____
ALVIN K. HELLERSTEIN
United States District Judge